McMILLIN, C.J.,
for the Court:
¶ 1. This case comes to the Court on appeal from the Chancery Court of Pren-tiss County. It involves several disputes that arose in a post-divorce proceeding brought by Linda Curtiss against her former husband, Donald Curtiss. Mrs. Cur-tiss filed a petition in which she sought extensive relief against her former husband in a number of areas. Apparently dissatisfied with the chancellor’s decision as to several of those areas of relief, Mrs. Curtiss has appealed the chancellor’s decision. This appeal deals with the following matters as to which Mrs. Curtiss sought relief before the chancellor:
(A)A request to modify the primary custody of the eighteen year old son of the parties from the father to the mother;
(B) A request to increase Mr. Cur-tiss’s periodic child support obligation;
(C) A petition to find Mr. Curtiss in contempt for failure to provide medical insurance as ordered and. his alleged failure to pay required medical expenses for the children;
(D) A request for entry of an automatic withholding order for child support.
¶ 2. Besides issues relating to these four requests for relief, Mrs. Curtiss raises an additional issue regarding the failure of Mr. Curtiss to file the financial disclosure statement required by Rule 8.05 of the Uniform Chancery Court Rules.
¶ 3. We grant certain relief to Mrs. Cur-tiss in the matter of health care coverage for the children and remand for further appropriate proceedings. As to other portions of the chancellor’s ruling, we affirm.
I.
Refusal to Change Custody
¶ 4. We affirm the chancellor’s decision not to modify custody of the eighteen-year-old child, John Curtiss. The evidence showed that this child was, at the time of the hearing, living with his adult married sister. His desire to live with his mother was nothing more than a conditional wish dependent upon the mother’s ability to obtain a suitable apartment. The child went so far as to concede that an earlier stay with his mother after the separation and prior to the divorce was unsatisfactory because of the unsuitability of existing living arrangements. Absent some proof that Mrs. Curtiss could immediately provide suitable accommodations for the child who was, in actuality, living with neither parent, a refusal to modify custody — for no apparent purpose other than to permit Mrs. Curtiss to obtain additional child support — does not appear to be such an abuse *144 of discretion that this Court ought to intercede. Touchstone v. Touchstone, 682 So.2d 374, 377 (Miss.1996).
EL
Refusal to Increase Child Support
¶ 5. Mrs. Curtiss’s proof regarding a need to increase child support was based solely on the supposition that she would obtain primary custody of John Curtiss, thus giving her custody of all four minor children of the parties. Because we are affirming the chancellor’s decision not to modify custody, there exists no evidence of a material change in circumstance that would warrant a modification of child support, and we, therefore, affirm the chancellor’s decision on that score. See Shipley v. Ferguson, 638 So.2d 1295, 1298 (Miss. 1994).
III.
The Matter of Health Insurance and Medical Expenses for the Children
¶ 6. Mrs. Curtiss asked that Mr. Curtiss be held in contempt for his failure to abide by this following provision of the divorce judgment:
Donald R. Curtiss will be required to maintain the four dependent children on his medical insurance through his place of employment and Champús, and pay all medical, dental and drug expenses of the four dependent children not covered by this insurance.
¶ 7. The evidence is uncontradicted that Mr. Curtiss did not obtain medical insurance for the children through his employer after the divorce, though the children were all covered by CHAMPUS since Mr. Cur-tiss was a retired career military man. He testified at trial that he had misunderstood his obligation and thought the obligation to provide insurance permitted him the alternative of furnishing one coverage from either available source. It appeared to be Mr. Curtiss’s contention also that, so long as health care costs for, the children remained at a reasonable level, it was more economical for him to pay directly those expenses not covered by CHAMPUS than to pay what he understood was likely to be a hefty monthly health insurance premium through his employment.
¶ 8. In touching on his obligation to provide medical coverage for the children, Mr. Curtiss presented evidence that he contended would indicate that Mrs. Curtiss was purposely incurring unnecessary and exorbitant medical bills on the children’s behalf solely as a vindictive measure against him. Though Mr. Curtiss had filed no counter-petition seeking a modification in the manner health costs for the children were handled, his counsel did ask, during the course of the proceeding, that the chancellor undertake to provide Mr. Cur-tiss some relief on this score. Counsel for Mrs. Curtiss objected to the request on the ground that this issue was not raised in the pleadings and it would constitute unfair surprise to permit the issue to be raised mid-hearing.
¶ 9. Despite the objection, the chancellor found as a matter of fact that Mrs. Curtiss had, in fact, amassed excessive medical bills and ordered that, in the future, any health cost related to the children in excess of $50 per month not covered by insurance would require mutual consent of both parents, otherwise, as to those costs exceeding the $50 limit, Mr. Curtiss would have no obligation.
¶ 10. The chancellor’s decision did not speak to the question of whether Mr. Cur-tiss was in contempt of court because of his admitted failure to obtain additional health insurance coverage at his work beyond CHAMPUS. We find that to be *145 error on the part of the chancellor. Having been squarely presented with the issue that Mr. Curtiss had failed to meet a specific requirement of the judgment, the chancellor was obligated to resolve the matter by making those findings of fact and conclusions of law that would explain his reasoning in deciding the issue.
¶ 11. Secondary to the issue of contempt — assuming for the moment that the chancellor were to conclude on remand that Mr. Curtiss’s failure to obtain dual insurance policies on the children was in wilful disregard of his court-ordered duty — is the matter of an appropriate sanction for that contempt. As to that matter, we cannot help but observe that, to a certain extent, Mr. Curtiss’s failure to obtain a second insurance policy carried with it a self-executing sanction since his obligation was, in all events, to pay all health costs not paid by available insurance. While there was proof that, at the time of the hearing, there were outstanding medical bills for the children, Mr. Cur-tiss’s testimony indicated that he was not denying his duty to pay those costs but that he was simply financially unable to satisfy them all in full because of the exceptionally high volume of medical costs incurred on behalf of the children in the aftermath of the parties’ divorce. Assuming that the chancellor found that explanation plausible, which it appears to be on its face, then there is no basis to conclude that Mrs. Curtiss or the children have suffered any demonstrable injury by virtue of the unavailability of a second policy of health insurance to cover the children’s health care needs. The lack of any apparent harm would warrant consideration in determining the severity of any additional sanctions imposed on Mr. Curtiss beyond those possible self-imposed sanctions we have already touched upon.
¶ 12. As a practical matter, it may be that Mr. Curtiss’s explanation for his failure to obtain double health insurance coverage was a rational decision. Double coverage rarely equates to double benefits since most such policies have clauses that limit benefits in the event of other available insurance coverage. If, in fact, it can be demonstrated with some certainty that the added benefits from a second policy would not typically exceed the recurring premium cost, then it would be a punitive measure and nothing more to require Mr. Curtiss to obtain this additional coverage. Mr. Curtiss’s chief error, in that event, was acting on that conclusion unilaterally rather than petitioning the chancellor for an appropriate modification of the judgment. That disregard for the chancellor’s order, even if supported by logical reasoning, cannot, of course, be ignored. Therefore, the chancellor must deal appropriately with what has occurred to date in this regard. However, upon remand, there is no prohibition against Mr. Curtiss filing appropriate pleadings to put before the chancellor the matter of the most advantageous way to provide adequate health care to the children in the future without working an unreasonable or undue hardship on either parent. The primary interest to be protected is the welfare of the children involved. Tedford v. Dempsey, 437 So.2d 410, 417 (Miss.1983)(“All need to be reminded that in cases such as this the best interests of the children are as always [the Court’s] touchstone.”) These children gain no advantage from a judgment compelling their father to pay exorbitant health insurance premiums for duplicate coverage if the desired result can be reached in a way that lessens their father’s financial burden. Certainly, on remand, the parties can be expected to take the time to get the pleadings in such order that the chancellor can properly address all aspects of these issues.
*146 ¶ 13. We farther find that the matter of prospectively modifying Mr. Cur-tiss’s obligations in this area was not properly before the court, and that Mrs. Curtiss filed a timely objection to consideration of that matter, so that it cannot be fairly argued that the matter was tried by consent. See M.R.C.P. 15(b). We, therefore, reverse the chancellor’s ruling regarding Mr. Curtiss’s duty to provide dual insurance coverage and the handling of medical costs in excess of $50 per month, but without prejudice for the chancellor to consider these matters further, at least prospectively, in the event appropriate supplemental pleadings to properly frame the issues are filed after remand.
IV.
Failure to Enter a Withholding Order
¶ 14. Mrs. Curtiss argues that the chancellor was statutorily obligated to enter an automatic withholding order once she requested the entry of such an order. The statute quoted by Mrs. Curtiss in support of her argument was adopted by the Mississippi Legislature with an effective date of July 1, 1999. Miss.Code Ann. § 93-11-103 (Supp.1999). The child support obligation in this case arose by virtue of the divorce judgment dated February 11, 1998. At the time of creation of the child support obligation, an earlier version of Section 93-11-103 required a withholding order only in the event of a delinquency or on the obligor’s request. Miss.Code Ann. § 93-11-103(1) (Rev.1994). The more recent version of the statute requires a withholding order from the inception with two enumerated exceptions. The language of the modified version would also seem to cover support orders entered pri- or to its effective date if such order is modified or found to be in arrears after the statute’s effective date. However, in this case, there was no finding by the chancellor that Mr. Curtiss was in arrears on his child support, and Mrs. Curtiss does not contend on appeal that the chancellor erred in this respect. Additionally, the chancellor did not modify the support order in this proceeding. Thus, there is no triggering mechanism under the version of Section 93-11-103(1) in effect at the time of this hearing that would compel (or even authorize) the chancellor to enter an involuntary child support withholding order against Mr. Curtiss. The failure to enter such an order was not error.
V.
Failure to File Financial Disclosure Statement
¶ 15. We find the allegation that the chancellor erred in not requiring Mr. Curtiss to file a complete financial disclosure statement as required by Uniform Chancery Court Rule 8.05 to be procedurally barred. Mrs. Curtiss’s counsel objected to the introduction of a budget prepared by Mr. Curtiss, claiming it failed to meet the full requirements of Rule 8.05. The chancellor admitted the document subject to the right of counsel to request a recess during which Mr. Curtiss would be required to complete a more detailed financial disclosure should the need arise during cross-examination. There is no indication in the record that counsel for Mrs. Curtiss subsequently invoked his client’s right to compel a more complete disclosure. There is no readily-apparent reason to assume that such a procedure would not have resolved any evidentiary problems that may have arisen by virtue of having commenced the hearing without the complete financial disclosure document. We cannot put the trial court in error for a matter upon which it was not offered the opportunity to rule. Johnston v. Johnston, 722 So.2d 453 (¶ 19) (Miss.1998).
*147 ¶ 16. For the foregoing reasons, we remand solely for the purpose of resolving the question of provision of health care for the children, including the question of Mr. Curtiss’s possible contempt for failing to obtain health insurance for the children through his employment and, assuming that contempt is found, what sanctions are appropriate in view of the fact that Mrs. Curtiss failed to show any demonstrable injury to her or the children based upon Mr. Curtiss’s failure. We trust that, before the matter is heard on remand, the parties will be able to get their pleadings in order so that they and the chancellor will be fully informed as to the claims and contentions of both parties, and will be able to resolve the disputed issues for the future once and for all after a full and fair hearing.
¶ 17. THE JUDGMENT OF PREN-TISS COUNTY FINDING THE APPEL-LEE NOT TO BE IN CONTEMPT FOR HIS FAILURE TO OBTAIN HEALTH INSURANCE COVERAGE FOR THE CHILDREN THROUGH HIS EMPLOYMENT IS REVERSED AND REMANDED. THAT PART OF THE JUDGMENT PROSPECTIVELY ALTERING THE MANNER OF HANDLING HEALTH EXPENSES FOR THE MINOR CHILDREN NOT COVERED BY INSURANCE IS REVERSED WITHOUT PREJUDICE TO THE APPEL-LEE TO PRESENT THE MATTER ON REMAND THROUGH APPROPRIATELY AMENDED PLEADINGS. ALL OTHER ASPECTS OF THE JUDGMENT ARE AFFIRMED. THE COSTS OF THIS APPEAL SHALL BE EQUALLY DIVIDED BETWEEN THE APPELLANT AND THE APPELLEE.
SOUTHWICK, P.J., BRIDGES, MOORE, AND THOMAS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND LEE, J. BRIDGES, J., CONCURS WITH SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.