# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01442-SCT

*ERNEST EDWIN NORTON, JR.*

*v.*

*GLENDA F. NORTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/16/1997 |
| TRIAL JUDGE: | HON. DONALD PATTERSON |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DOUG DOUGLAS WADE |
| ATTORNEY FOR APPELLEE: | DAN H. FAIRLY |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 6/3/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/24/99 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Ernest Edwin Norton, Jr. appeals from the judgment of the Lincoln County Chancery Court dismissing his motion for modification of his final judgment of divorce. With the exception of the imposition of sanctions, we find no error and affirm the decision of the Lincoln County Chancery Court.

## STATEMENT OF THE FACTS

¶2. Glenda F. Norton and Ernest Edwin Norton, Jr. were divorced on the grounds of irreconcilable differences on July 27, 1994, by a judgment of the Lincoln County Chancery Court. On February 4, 1997, Ernest filed a motion for modification due to a change in circumstances.

¶3. The divorce decree provided that Ernest would pay Glenda $800 per month for ten years for consulting services to Ernest's company, Brookwood Gifts and Antiques, Inc. The payments were to commence July 1, 1994. Both Glenda and Ernest specifically agreed that the payments would not be subject to modification and would not be construed as alimony. On the same day as the divorce decree, Glenda

entered into a professional services contract with Brookwood Gifts wherein she agreed to provide consulting services to Brookwood in exchange for a fee of $800 per month for ten years. The agreement provided that the payments would be "in lieu of, in exchange of, and relinquishment of a claim of alimony by Glenda F. Norton against Ernest Edwin Norton, Jr. . . . ." Additionally, Ernest personally guaranteed all payments due under the agreement even if the business ceased operation.

¶4. During the hearing on the motion for modification, Ernest's attorney explained that the reason the parties formed the divorce settlement with the divorce decree and the additional professional services contract was to ensure that there could be no modification of the obligations, as well as providing tax benefits to Ernest.

¶5. On February 4, 1997, Ernest filed a motion to modify the Final Judgment of Divorce and to have the professional services contract nullified. He claims that since the entry of the Final Judgment of Divorce there has been a material change in circumstances between the parties which justifies modification of the Final Judgment of Divorce. He also claims that as well as securing employment with a business in direct competition with Brookwood, Glenda Norton has failed to perform any consulting services as contemplated by the Final Judgment of Divorce and outlined in the Professional Services Contract. He claims that such failure to perform constitutes a breach of contract and failure of consideration. He asked that the court remove his obligation to pay the $800 per month "consulting fee" and to order all money paid pursuant to this agreement returned to him as damages. In the alternative, he asked that the court consider the payments made to Glenda "payments made in lieu of periodic alimony and that [Glenda] remarried in or about December 1995; thus terminating periodic alimony." As in his first argument, he again asked that the professional services contract be ordered a nullity and Glenda Norton be ordered to return all payments made pursuant to the contract as damages.

¶6. The Chancellor found that the obligation was not subject to modification or termination because the payments constituted either a property settlement or lump sum alimony, neither of which can be modified. Before granting the motion to dismiss the motion for modification, he noted the language in the divorce decree which specifically stated that the payments were not subject to modification. As well as dismissing the case the Chancellor imposed sanctions and attorney's fees against Ernest Norton and his attorney, Doug Wade in the amount of $1,823.97.

¶7. On June 25, 1997, Ernest filed a motion for reconsideration. On October 10, 1997, the Chancellor denied Ernest's motion and assessed his counsel an additional $364.48 for the filing of the additional motion. Aggrieved, Ernest Norton appeals the judgment of the Lincoln County Chancery Court and raises the following assignments of error for consideration by this Court:

> **I. DID THE COURT ERR IN CONSIDERING THE LETTER FROM GLENDA TO ERNEST RECOMMENDING THAT HE WITHDRAW HIS MOTION FOR MODIFICATION?**
>
> **II. DID THE CHANCERY COURT ERR IN DISMISSING THE MOTION FOR MODIFICATION OF FINAL JUDGMENT OF DIVORCE AS TO BROOKWOOD GIFTS & ANTIQUES FOR NON-JOINDER OF PARTIES?**
>
> **III. DID THE CHANCERY COURT ERR IN DISMISSING THE MOTION FOR MODIFICATION AND THE MOTION FOR RECONSIDERATION AS BEING FRIVOLOUS AN WITHOUT SUBSTANTIAL MERIT?**

**IV. DID THE CHANCELLOR ERR IN DENYING ERNEST NORTON'S MOTION FOR RECONSIDERATION?**

**V. DID THE CHANCERY COURT EXHIBIT BIAS OR PREJUDICE AGAINST THE APPELLANT AND APPELLANT'S ATTORNEY AND DID THE CHANCERY COURT PREJUDICE THE CASE PRIOR TO HEARING THE MOTION?**

**VI. DID THE CHANCERY COURT ERR IN ASSESSING SANCTIONS AGAINST APPELLANT AND APPELLANT'S ATTORNEY? STANDARD OF REVIEW**

¶8. When reviewing a chancellor's decision, this Court will accept the chancellor's findings of fact as long as the evidence in the record reasonably supports those findings. *In re Estate of Taylor v. Thompson*, 609 So.2d 390, 393 (Miss. 1992). In other words, we will not disturb the findings of a chancellor unless those findings are clearly erroneous or an erroneous legal standard was applied. *Hill v. Southeastern Floor Covering Co.*, 596 So.2d 874, 877 (Miss. 1992). Where the factual findings of the chancellor are supported by substantial credible evidence, they are insulated from disturbance on appellate review. *Jones v. Jones*, 532 So.2d 574, 581 (Miss. 1988) (citing *Norris v. Norris*, 498 So.2d 809, 814 (Miss. 1986); *Carr v. Carr*, 480 So.2d 1120, 1122 (Miss. 1985).

## ANALYSIS

### I. DID THE COURT ERR IN CONSIDERING THE LETTER FROM GLENDA TO ERNEST RECOMMENDING THAT HE WITHDRAW HIS MOTION FOR MODIFICATION?

¶9. Prior to the hearing of this matter on June 3, 1997, Glenda Norton through her attorney, wrote Ernest Norton and recommended that he withdraw his motion for modification in light of *East v. East*, 493 So.2d 927 (Miss. 1986). At the hearing, the Chancellor held that "legal obligations arising out of that contract [between Brookwood Gifts & Antiques, Inc. and Glenda Norton] are not here justiciable because Brookwood Gifts & Antiques is not a party to this motion."

¶10. Ernest first argues that the chancellor erred in considering the letter from Glenda, which recommended that he withdraw the motion for modification in light of current precedent. Ernest argues that the letter was not properly introduced into the record. The letter was made an exhibit to Glenda's motion to dismiss and was relevant to her request for sanctions. Documents which are made exhibits to motions are properly before the court for its consideration. *See Barlow v. Serio*, 129 Miss. 432, 433, 91 So. 573, 574 (1922). Additionally, the legal analysis contained in the letter was, for the most part, also included in the motion to dismiss. Therefore, this assignment of error is without merit.

### II. DID THE CHANCERY COURT ERR IN DISMISSING THE MOTION FOR MODIFICATION OF FINAL JUDGMENT OF DIVORCE AS TO BROOKWOOD GIFTS & ANTIQUES FOR NON-JOINDER OF PARTIES?

¶11. The motion to modify the final judgment of divorce was filed by Ernest and Brookwood. The chancellor was correct in dismissing Brookwood as a party because Brookwood was not a party to the divorce and thus, has no standing to seek a modificaiton.

### III. DID THE CHANCERY COURT ERR IN DISMISSING THE MOTION FOR

**MODIFICATION AND THE MOTION FOR RECONSIDERATION AS BEING FRIVOLOUS AN WITHOUT SUBSTANTIAL MERIT?**

**IV. DID THE CHANCELLOR ERR IN DENYING ERNEST NORTON'S MOTION FOR RECONSIDERATION?**

¶12. Absent fraud or a contractual provision stating otherwise, neither a property settlement nor lump sum alimony may be modified. *Mount v. Mount*, 624 So.2d 1001, 1005 (Miss. 1993). The agreement between Ernest and Glenda explicitly stated that the $800 per month was not alimony and that the agreement was not modifiable by either party.

¶13. The pertinent part of the divorce decree states as follows:

(c) Defendant shall pay unto Plaintiff the sum of $800.00 per month for 120 consecutive months commencing July 1, 1994, for consulting services to Brookwood Gifts & Antiques, Inc. Plaintiff and Defendant both acknowledge that these payments are not subject to modification, not shall they be construed as alimony.

¶14. In the hearing of this matter, Mrs. Norton's attorney appeared and specifically stated the intent of the parties in drafting the divorce decree as follows:

It was my intention and Mr. Patten's and Mr. And Mrs. Norton's intention at the time that that agreement be written in such a way so that (1) Mr. Norton and Mrs. Norton could not come back in court and seek an increase, (2) he wanted to be able to deduct the payments fixed if they were not - when you call it periodic alimony he would have lost the benefit. He would have the benefit of being able to deduct it, but he would run the risk that she could come back and seek an increase. The idea was that she wanted some assurance, not only from his personal pocketbook, but from the business pocketbook, that she would be paid and Mr. Patten and I tried, as best we could , to draft not only to make the announcement to the court which became their written agreement, that's now in transcript, prepare the judgment of divorce in a way, prepare an agreement and a release, four different documents, in a way so that what's happening today would never happen, so that the parties would understand that this was a locked-in $800 per month for ten years period, not subject to modification.

¶15. It is apparent, from the above unchallenged explanation of the parties' intent, that the purpose of the "contract" was to label the alimony under a different name so that Ernest could gain tax benefits and so that Glenda could not petition for an increase. The agreement was clearly the accomplishment of lump-sum alimony through a legal fiction in the form of an employment contract. The agreement was envisioned by Ernest to prohibit his ex-wife from securing an increase in payment and to secure tax advantages for himself or his corporation by payment to his ex-wife of "salary" through his corporation instead of the payment of alimony.

¶16. Brookwood's grounds for complaint stem from the contract and not the alimony agreement found in the judgment of divorce. If Brookwood believed that Glenda was not performing her obligations under the contract, its remedy is to file a breach of contract action in the appropriate court.

¶17. The agreement is vague in that it fails to state what duties Glenda's consulting services entail. It is also apparent that the $800 per month for ten years payment was not in exchange for Glenda's services but

rather paid as partial consideration for Glenda "releasing any claims she has in the business lawsuit and the settling of any claims for alimony."

¶18. "This Court has consistently held that periodic alimony is subject to modification and ceases upon the wife's remarriage or the husband's death. With regard to lump sum alimony, however, this Court has historically held that such alimony constitutes a fixed liability of the husband and his estate and is not subject to modification." *McDonald v. McDonald*, 683 So.2d 929, 931 (Miss. 1996) (citations omitted).

¶19. The payments in this case were not subject to modification and were not made terminable upon the death or remarriage of Mrs. Norton. Additionally, the agreement between the parties specifically states that the payments were "in lieu of, in exchange of, and relinquishment of a claim of alimony by Glenda F. Norton against Ernest Edwin Norton, Jr., in a certain divorce action filed in the Chancery Court of Lincoln County, Mississippi." We will not permit Mr. Norton to mislead the Court and benefit himself at the expense of Mrs. Norton.

¶20. It is clear that Ernest agreed to pay Glenda $800 a month for 10 years if she forewent her claims to alimony and litigation against the business. At all times, Ernest was fully competent and represented by counsel. The contested provision is simply an alimony agreement wherein Ernest agreed to pay Glenda a set sum for a definite period. As such, Ernest has no grounds to modify the agreement nor to bring a contempt action because his is the only obligation left to be performed. Similarly, Brookwood cannot complain because Glenda has performed her obligations under the contract: to abstain from demanding alimony and suing the business.

¶21. The payments Mr. Norton made to Mrs. Norton are clearly lump-sum alimony payments disguised in terms of salary for the benefit of Mr. Norton and his corporation. Because lump-sum alimony is not subject to modification, we affirm the decision of the trial court.

### V. DID THE CHANCERY COURT EXHIBIT BIAS OR PREJUDICE AGAINST THE APPELLANT AND APPELLANT'S ATTORNEY AND DID THE CHANCERY COURT PREJUDICE THE CASE PRIOR TO HEARING THE MOTION?

¶22. This Court has held that "[u]nder the appropriate standard, the judge is presumed qualified and unbiased. This presumption may only be overcome by evidence showing beyond a reasonable doubt that the judge was biased or not qualified." *Collins v. Joshi*, 611 So.2d 898, 901 (Miss. 1992).

¶23. Ernest argues that the chancellor had already decided the case prior to his arrival at the hearing on June 3, 1997, that he was antagonistic toward Ernest and his attorney, he became an advocate for Glenda, and he would not allow Ernest's attorney to respond to the arguments made by Glenda's attorney. Additionally, Ernest argues that the fact that the chancellor sanctioned his attorney, Doug Wade, solely for filing a motion for reconsideration is clear evidence of bias. Finally, Ernest argues that the excessive amount of sanctions levied against him and his attorney, a total sum of $2,193.23, indicates bias and prejudice. On these facts alone, we cannot say that the chancellor was biased beyond a reasonable doubt as is required to overcome the presumption that he was not. Therefore, this issue is without merit.

### VI. DID THE CHANCERY COURT ERR IN ASSESSING SANCTIONS AGAINST APPELLANT AND APPELLANT'S ATTORNEY?

¶24. The chancellor in the case at bar imposed sanctions upon Ernest Norton and his attorney, Mr. Wade,

for filing a frivolous law suit. Upon filing a motion for reconsideration, the chancellor again sanctioned Wade. The sanctions were imposed in the form of attorney's fees. We will discuss the validity of the imposition of attorney's fees upon Norton and Wade separately.

## A. Sanctions upon Ernest Norton

¶25. This Court will not reverse the chancellor on an award of attorney fees unless manifest error is revealed by the record. *Setser v. Piazza*, 644 So. 2d 1211, 1216 (Miss. 1994). In *Voda v. Voda*, 1999 WL 22361, *4 (Miss., Jan. 21, 1999) (NO. 97-CA-00247-SCT), we held that "[t]he party seeking attorney's fees is required to clear some evidentiary hurdles before fees may be awarded. If the record is insufficient to show an inability by the requesting party to pay attorney's fees, it would be an abuse of discretion to award them." "The standard for an award of attorney fees on a motion for modification of child support is basically the same as that applied in an original divorce action. Attorney fees are not awarded in child support modification cases unless the party requesting fees is financially unable to pay them." *Setser*, 644 So. 2d at 1216 (citations omitted). However, we have also addressed the situation where the motion for modification is unsuccessful due to lack of justification for the motion. Generally, in such a case, the husband is assessed with attorney's fees. *Shipley v. Ferguson*, 638 So. 2d 1295, 1301 (Miss. 1994) (*citing Cumberland v. Cumberland*, 564 So. 2d 839, 845 (Miss. 1990)). In *Shipley*, we held that where the husband had no basis on which to bring the claim that he was entitled to a reduction in child support payments, the wife was entitled to an award of attorney's fees. However, the wife in *Shipley* was able to show that she was unable to pay the attorney's fees. *Shipley*, 638 So. 2d at 1301. *See also*, *Adams v. Adams*, 591 So. 2d 431 (Miss. 1991) (holding that where wife was brought in by husband and wife was largely successful, she was not required to take from the corpus of her investment or from her teacher's salary to pay full attorney fees). *Cumberland v. Cumberland*, 564 So. 2d 839, 845 (Miss. 1990), is determinative on this issue. In *Cumberland*, this Court held that the wife was not entitled to attorney's fees for her husband's post-divorce plea. The Court denied his plea, but found that an award of attorney's fees was not proper where his demand was based on legitimate reasons and the wife was able to pay her own fees. *Id.*

¶26. In the present case, although there is room for disagreement, it appears that Ernest Norton had a good-faith belief that he was pursuing his legal right to a modification of the agreement between Glenda Norton and himself. Additionally, the record is devoid of evidence that Glenda is unable to pay her fees. Therefore, the chancellor was in error in awarding attorney's fees to Glenda Norton against Ernest Norton.

## B. Sanctions against Doug Wade

¶27. We have stated:

> Miss. Code Ann. § 11-55-3(a) provides that a claim is without substantial justification when it is "frivolous, groundless in fact or in law, or vexatious, as determined by the court." To determine whether a claim is frivolous pursuant to the statute, this Court looks to the definition of "frivolous" found in M.R.C.P. 11. *Leaf River Forest Products, Inc. v. Deakle*, 661 So.2d 188, 197 (Miss.1995). For purposes of Rule 11, a claim is frivolous "only when, objectively speaking, the pleader or movant has no hope of success." *Stevens v. Lake*, 615 So.2d 1177, 1184 (Miss.1993), quoting *Tricon Metals & Services, Inc. v. Topp*, 537 So.2d 1331, 1335 (Miss.1989); *Smith v. Malouf*, 597 So.2d 1299, 1303 (Miss.1992)(applying Rule 11 definition to Litigation Accountability Act context). "Though a case may be weak or 'light-headed,' that is not sufficient to label it frivolous."

*Deakle*, 661 So.2d at 195; *Nichols v. Munn*, 565 So.2d 1132, 1137 (Miss.1990).

*Scruggs v. Saterfiel*, 693 So.2d 924, 927 (Miss. 1997).

¶28. As previously discussed Ernest had substantial justification in presenting the motion for modification. Therefore, the chancellor erred in imposing sanctions upon Ernest Norton's attorney. Clearly, this is not the type of case warranting sanctions under Mississippi law. *See Scruggs v. Saterfiel*, 693 So. 2d at 927; *Stevens v. Lake*, 615 So.2d 1177, 1184 (Miss. 1993); *Tricon Metals & Services, Inc. v. Topp*, 537 So.2d 1331, 1335 (Miss. 1989). Therefore, as to the chancellor's imposition of sanctions, both as to the motion for modification and the motion for reconsideration, we reverse and render.

## CONCLUSION

¶29. We find the payments made to Glenda Norton by Ernest Edwin Norton are lump- sum alimony payments, the modification of which is not allowed absent fraud or a contractual provision stating otherwise. We affirm the chancellor's dismissal of the motion to modify. We reverse and render, however, the chancellor's award of attorney's fees.

¶30. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**PRATHER, C.J., PITTMAN, P.J., SMITH AND WALLER, JJ., CONCUR. BANKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. McRAE, J., JOINS IN PART. COBB, J., NOT PARTICIPATING.**

BANKS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶31. In my view, both the payments to be made by Ernest and the consulting services to be performed by Glenda are a part of the divorce decree, and the failure of either to perform may be grounds for some relief under that decree. Accordingly, I dissent from the Court's affirming the dismissal of Ernest's petition.

**I.**

**a.**

¶32. In my opinion, the chancellor abused his discretion by dismissing the motion for modification of final judgment of divorce as to Brookwood Gifts for non-joinder of a party. This Court has held on a number of occasions that in divorce actions the rights and obligations of a corporation can not be decided without joining the corporation as a party. *Skinner v. Skinner*, 509 So. 2d 867, 870 (Miss. 1987); *East v. East*, 493 So. 2d 927, 933 (Miss. 1986). Additionally, Miss. R. Civ. P. 21 dictates that Ernest should have been given an opportunity to join the absent party. The failure to join a necessary party to an action is a curable defect, and an action should not be dismissed for a failure to join. *Id.* "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." *Id.*

## b.

¶33. The chancellor also erred, in my opinion, by summarily dismissing Ernest's motion for modification as frivolous and without substantial merit. The chancellor relied on *East v. East*, 493 So. 2d 927 (Miss. 1986), in finding that the non-modification provision of the property settlement agreement was binding and prevented Ernest from requesting the modification of the payments. In *East* this Court held that the husband was bound by his property settlement agreement to pay his ex-wife a specified amount, without modification, for the rest of her life. *East*, 493 So. 2d at 932. Here, unlike the property settlement agreement in *East*, the $800 monthly payments were expressly conditioned on Glenda providing consulting services for Brookwood Gifts for a period of ten (10) years or until such time as it should cease to be a going concern. Should Brookwood Gifts cease to be a going concern before the expiration of ten (10) years, Glenda's obligation to provide consulting services would extinguish but Ernest's obligation to pay would continue for the balance of the ten (10) year period.

¶34. In *Holloman v. Holloman*, 691 So. 2d 897, 899 (Miss. 1996), it was held as follows:

> This Court, in *Cherry v. Anthony, Gibbs, Sage*, 501 So.2d 416, 419 (Miss.1987), stated, "It has long been the law in Mississippi that in construing particular provisions in a contract, a court will look to the document as a whole." *Id.* Here, the Hollomans have expressed their clear intent from a fair reading of the settlement agreement as a whole. * * * * This Court, in *Newell v. Hinton*, 556 So.2d 1037 (Miss.1990), citing *Roberts v. Roberts*, 381 So.2d 1333, 1335 (Miss.1980), stated:

> Intent of the parties is crucial in contract interpretation. Of course, it must be understood that the words employed in a contract are "by far the best resource for ascertaining intent and assigning meaning with fairness and accuracy."

> *Newell*, 556 So. 2d at 1042.

The pertinent part of the divorce decree, as quoted by the majority, clearly states that the payments were in exchange for consulting services and were not to be construed as alimony. In finding that the payments were actually lump-sum alimony, the majority relies on the argument by Glenda's attorney at the modification hearing as to the parties' intent and ignores the plain language of the decree itself.

¶35. The agreement between the parties herein, which was incorporated into the decree, formed a contract separate and distinct from the professional services contract between Glenda and Brookwood Gifts. "A property settlement agreement is no different from any other contract." *East*, 493 So. 2d at 931-32. When parties form a contract for the benefit of a third party, either of the contracting parties may seek to enforce the contract on the grounds that the other party has not lived up to his or her end of the bargain. *Rogers v. Rogers*, 662 So. 2d 1111, 1114 n.1 (Miss. 1995). Certainly, if Ernest or the corporation had failed to make the payments, Glenda would have been able to come into court and prosecute that issue. I am of the view that Glenda's obligation to provide services is equally enforceable.

¶36. For the foregoing reasons, I would reverse the judgment of the chancery court and remand for further proceedings on the issue of whether Ernest was entitled to modification. It follows, of course, that I agree that sanctions were improperly imposed upon Ernest and his attorney.

**SULLIVAN, P.J., JOINS THIS OPINION. McRAE, J., JOINS IN PART.**